313 F.2d 586
 H. KEMPNER, Galveston Cotton Company and Texas Cotton Industries, Petitioners,
v.
FEDERAL MARITIME COMMISSION (formerly Federal Maritime Board) and United States of America, Respondents,
Gulf/Mediterranean Ports Conference et al., The Common Carriers by Water, Members of the Far East Conference, Intervenors.
 No. 16658.
 United States Court of Appeals District of Columbia Circuit.
 Argued September 26, 1962.
 Decided January 10, 1963.
 Petition of Intervenors Gulf/Mediterranean Ports Conference, et al. for Rehearing En Banc Denied En Banc on February 15, 1963.
 Petition of Intervenor Members of the Far East Conference for Rehearing En Banc Denied En Banc on February 26, 1963.
 
 Mr. Shelby Fitze, Washington, D. C., with whom Messrs. Delmar W. Holloman and James T. Welch, Washington, D. C., were on the brief, for petitioners.
 
 
 1
 Mr. Paul D. Page, Jr., Atty., Federal Maritime Commission, with whom Mr. James L. Pimper, Gen. Counsel, Federal Maritime Commission, was on the brief, for respondent Federal Maritime Commission. Messrs. Robert E. Mitchell, Deputy Gen. Counsel, Federal Maritime Commission, and Thomas D. Wilcox, Atty., Federal Maritime Commission, also entered appearances for respondent Federal Maritime Commission.
 
 
 2
 Mr. Joel E. Hoffman, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Irwin A. Seibel, Atty., Dept. of Justice, was on the brief, for respondent United States.
 
 
 3
 Mr. Edward S. Bagley, New Orleans, La., of the bar of the Supreme Court of Louisiana, pro hac vice, by special leave of court, for intervenors Gulf/Mediterranean Ports Conference and others. Mr. Joseph M. Rault, New Orleans, La., was on the brief for intervenors Gulf/Mediterranean Ports Conference and others.
 
 
 4
 Mr. Elkan Turk, Jr., New York City, with whom Mr. Elkan Turk, New York City, was on the brief, for intervenors The Common Carriers by Water, Members of the Far East Conference.
 
 
 5
 Before WILBUR K. MILLER, DANAHER and WRIGHT, Circuit Judges.
 
 
 6
 PER CURIAM.
 
 
 7
 The Federal Maritime Board[1] denied reparations sought by the petitioners because of the imposition of dual rates said to have been unlawful. It held that, since it had not disapproved the rates, it had in effect approved them; and that, in any event, the so-called Moratorium Act[2] protected the carriers from liability which accrued before its passage.
 
 
 8
 The discriminatory rates here involved were not approved by the regulatory agency merely because it was silent concerning them, and the rates were therefore illegal. We think, too, that the Moratorium Act is prospective only and so does not relieve an offender from liability for reparations arising from a violation which occurred prior to its enactment.
 
 
 9
 Reversed and remanded to the Commission for assessment of reparations.
 
 
 
 Notes:
 
 
 [1]
 The agency has gone through a succession of names. Since 1961 it has been called the Federal Maritime Commission
 
 
 [2]
 The Moratorium Act, 72 Stat. 574, amended Section 14 of the Shipping Act of 1916, 39 Stat. 733, 46 U.S.C. § 812
 
 
 
 10
 DANAHER, Circuit Judge (dissenting).
 
 
 11
 The Supreme Court on May 19, 1958 decided Federal Maritime Board v. Isbrandtsen Co., Inc., 356 U.S. 481, 78 S. Ct. 851, 2 L.Ed.2d 926, holding that a dual rate system which is "designed to destroy the competition of independent carriers" or "to stifle outside competition" or which otherwise employs predatory devices constitutes a "resort to other discriminating or unfair methods" in violation of section 14 of the Shipping Act of 1916.[1] As of the date of the Court's opinion, there were in existence many dozens of "conferences" subject to the jurisdiction of the Board.
 
 
 12
 Congress moved promptly because of the "grave doubts cast by the Supreme Court decision upon the legality of the dual rate system and the possible detrimental results to both American shipping and American foreign commerce."[2] The Senate feared for the "legality of the thousands of exclusive patronage dual rate contracts then used by more than half the 113 inbound and outbound steamship conferences serving U.S. ports. For many years, these dual rate conferences and the shippers they served had been parties to such contracts, with the tacit or express approval of the Federal Maritime Board."[3]
 
 
 13
 Congress therefore amended section 14 of the Shipping Act of 1916 "to provide that nothing in that act made unlawful any dual rate contract arrangement in effect at the time of the Supreme Court's decision (May 19, 1958), unless and until disapproved, canceled, or modified by the Federal Maritime Board, in accordance with the standards in section 15 of the act."[4] (Emphasis added.)
 
 
 14
 Congress was not concerned with "rates." It deemed, however, of vital interest — at least until Congress had an adequate opportunity to review the problem — the threat to "any" dual rates. Clearly Congress considered that not all dual rate systems came within the purview of the Supreme Court's decision.
 
 
 15
 While the legislation was pending the Department of Justice reemphasized its historic position that "the system is inconsistent with the basic tenets of antitrust philosophy,"[5] but the Department's letter also emphasized[6] that the legislation
 
 
 16
 "would validate any existing dual-rate arrangement, whether or not it had been approved by the Board, unless and until the Board disapproves, cancels, or modifies such arrangement. There are a number of conferences which now employ a dual-rate system that has not been expressly approved by the Board. The bill would permit these conferences to continue to use their unapproved systems, even though they have been on notice for more than four years that such unapproved systems are illegal, and even though such systems would have been illegal even if the Supreme Court decision had gone the other way. However, in view of our having been advised that it is administratively not feasible for the Board to act on all of the as yet unapproved dualrate arrangements in the next 2 years, the Department interposes no objection to this provision of the bill."
 
 
 17
 Thus fully advised in the premises and after extensive House hearings, Congress adopted Public Law 85-626[7] which amended section 14 of the Shipping Act of 1916 by inserting the following:
 
 
 18
 "Provided, That nothing in this section or elsewhere in this Act, shall be construed or applied to forbid or make unlawful any dual rate contract arrangement in use by the members of a conference on May 19, 1958, which conference is organized under an agreement approved under section 15 of this Act by the regulatory body administering this Act, unless and until such regulatory body disapproves, cancels, or modifies such arrangement in accordance with the standards set forth in section 15 of this Act. The term `dual rate contract arrangement' as used herein means a practice whereby a conference establishes tariffs of rates at two levels the lower of which will be charged to merchants who agree to ship their cargoes on vessels of members of the conference only and the higher of which shall be charged to merchants who do not so agree." (Emphasis added.)
 
 
 19
 So read the law when the Board decided this case on August 4, 1961. Congress had amended the very Act from which the Board derived whatever authority it may have. Congress had spoken in behalf of a public policy of nearly a half century. As I read it, both the language of the statute and the congressional purpose are clear. It seems to me that on this record the Board could have done nothing but what it did do.[8]
 
 
 20
 Accordingly, I dissent.
 
 
 
 Notes:
 
 
 [1]
 46 U.S.C. § 801 et seq
 
 
 [2]
 H.R.Rep. No. 498, 87th Cong., 1st Sess. 3 (1961)
 
 
 [3]
 S.Rep. No. 473, 87th Cong., 1st Sess. 2 (1961)
 
 
 [4]
 Ibid
 
 
 [5]
 Letter of the Deputy Attorney General dated June 11, 1958 directed to Chairman Bonner of the House Committee on Merchant Marine and Fisheries
 
 
 [6]
 And for the reasons stated, our opinion in Isbrandtsen Co. v. United States has no bearing here. See 93 U.S.App.D.C. 293, 211 F.2d 51, cert. denied sub nom. Japan-Atlantic and Gulf Conference v. United States, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954)
 
 
 [7]
 72 Stat. 574, as amended by 74 Stat. 253 extending the expiration date to June 30, 1961 and as further amended by 75 Stat. 195 extending the expiration date to September 15, 1961
 
 
 [8]
 As a matter of additional emphasis, it should be noted that the 1958 amendment, as amended respecting expiration, was drafted to apply only to an arrangement, like that before us, in actual use by the members of a conference "on May 19, 1958," the date of the Court's Isbrandtsen decision, supra
 Congress, during the moratorium it had thus created, conducted extensive hearings, running through thousands of pages, as to which see H.R.Rep. No. 498, 87th Cong., 1st Sess. (1961); S.Rep. No. 860, 87th Cong., 1st Sess. (1961), U.S. Code Cong. and Adm.News 1961, p. 3108; H.R.Rep. No. 1247, 87th Cong., 1st Sess. (1961) [reproduced in 107 Cong.Rec. 19289-19291 (1961)]; and see, generally, Index to the Legislative History of the Steamship Conference/Dual Rate Law, S.Doc. No. 100, 87th Cong., 2d Sess. (1962). Thereupon, Congress enacted Public Law 87-346 (75 Stat. 762), approved October 3, 1961.
 See section 15 as there amended in terms of congressional acceptance of the administrative interpretation, so long established, with specific requirements as to disapproval only after notice and hearing, and on the grounds specified. All "other agreements" coming within the purview of section 15 were to be approved.
 It seems to me that congressional policy in this field beyond peradventure has been restated and reinforced. 46 U.S.C. § 814, e. g., additionally provides, as pertinent, that henceforth every permitted section 15 "agreement," like every section 813a "contract," the use of which may be permitted "by order" after the notice and hearing specified in section 813a, shall be entitled to the protection of the "exceptions" provided in sections 1-11 and 15 of Title 15.